# Exhibit A

Contract Between Credit Solutions and London Manhattan



# THE LONDON MANHATTAN COMPANY
## 222 WEST COLEMAN BLVD.
## MT. PLEASANT, SC 29464

July 31, 2007

Mr. Taylor Denton
CSA-Credit Solutions of America, Inc.
16803 Dallas Parkway, 7th Floor
Addison, TX 75001

Dear Denton:

This letter sets forth the contractual relationship ("Agreement") between The London Manhattan Company ("LMC") and CSA-Credit Solutions of America, Inc., and its subsidiaries, agents, affiliates, successors and assigns ("the Company") in connection with investment banking services ("Services") to be provided by LMC to the Company.

**ENGAGEMENT AND DUTIES OF LMC:** Effective upon the execution of this Agreement, the Company appoints LMC as its **EXCLUSIVE INVESTMENT BANKER** for the purposes of providing senior debt facilities, and LMC agrees to arrange for and/or to provide to the Company up to ~~THIRTY-FIVE MILLION~~ dollars (~~$35,000,000~~) [handwritten: $40,000,000 / forty-million] or more (referred to as the "Financing"), subject to due diligence by the lender and/or LMC and acceptable to the Company in its sole discretion.

**DUTIES OF COMPANY:** The Company shall use ~~its~~ best efforts to support and assist LMC in the execution of its duties hereunder in a timely manner. Pursuant thereto, the Company shall provide LMC with full and timely disclosure of all information on itself, and shall not withhold or cause to be withheld from LMC any information which may be relevant to the Services including current financial data, market information, pending litigation, personnel changes, discussions with potential investors/strategic partners, relationships among shareholders and other information which may have a material effect on the Services.

**EXPENSES:** LMC shall bear the cost of any incidental expenses unless otherwise approved in advance by the Company.

**TERM:** Except as provided herein, this Agreement shall have a term of THREE (3) months, commencing with the signing of this Agreement by the Company. The Agreement shall automatically renew every month thereafter unless otherwise terminated by one of the parties in writing no less than five (5) calendar days prior to the expiration of the term.

**EXCLUSIVITY:** Under the terms of this Agreement, The Company appoints LMC as its **EXCLUSIVE INVESTMENT BANKER** for the purposes specified in the ENGAGEMENT AND DUTIES OF LMC paragraph. This means that the Company shall pay the **Investment Banking Fee** specified in the COMPENSATION paragraph for any Financing originated during the term (see TERM paragraph) of this Agreement, whether by LMC, by the Company's employees or agents, or by any third parties.



**COMPENSATION:** As compensation to LMC for providing the Services under this Agreement, the Company shall pay to LMC an **Investment Banking Fee of ONE AND ONE HALF PERCENT (1.5%)** [handwritten: 1.25%] **of the Financing** calculated on the basis of the aggregate of all transactions (the maximum amount of a facility as set by a lender) in the Financing including debt facilities provided, renegotiated and/or arranged by LMC, the Company, or third parties during the term of this Agreement.

In the event that all or any portion of the Financing includes a financing arrangement or instruments not contemplated by this Agreement, other than Subordinated Debt or Equity, then the Company shall pay an **Investment Banking Fee of ONE AND ONE HALF PERCENT (1.5%) of the Financing** calculated as provided above as if the Financing had been contemplated by this Agreement. [handwritten: 1.25%]

**PAYMENT:** All **Investment Banking Fees** due shall be paid in US dollars to LMC directly by the lender from the proceeds of any Financing upon a closing, in whole or in part, under the terms and conditions of this Agreement. The Company hereby authorizes the Lender to use this Agreement as a directive to pay to LMC the full amount of any **Investment Banking Fees** from the proceeds of a closing without further approval by the Company. The Company acknowledges that LMC has special knowledge, expertise and contacts within the finance community, and that a lender or party which was introduced directly or indirectly to the Company by LMC ("Funding Source") may have an interest in subsequent financings with the Company. In consideration of the direct or indirect introduction of such a Funding Source to the Company by LMC, the Company agrees that if it closes upon any financing with such a Funding Source (including, without limitation, any subsidiary, affiliate or entity in which the Funding Source has an interest) within thirty-six (36) months following the date of termination of this Agreement, then the Company shall pay LMC the full amount of the **Investment Banking Fees** described above as if this Agreement were still in effect, whether or not the Company has previously closed upon the Financing contemplated in this Agreement. The Company agrees that **Investment Banking Fees** referred to in this Agreement are earned as of the acceptance by the Company of a financing proposal, but are payable at closing as provided herein. The Company agrees that the **Investment Banking Fee** shall be immediately due and payable if the Company intentionally defaults upon a proposal following its acceptance by the Company, or if the Company fails to use its best efforts to comply with and satisfy the due diligence or other requirements contained in the accepted proposal.

**VALIDITY:** The Company and LMC agree to take all actions and to execute and deliver all documents reasonably required by any other party to effect the intent of this Agreement. Each party warrants to the other that it has duly and validly authorized, executed and delivered this Agreement, which is a binding obligation enforceable against it in accordance with the terms hereof.

**CONFIDENTIAL INFORMATION:** LMC will treat as confidential all non-public information provided to LMC by the Company. Except for information provided to prospective financing sources or other financial professionals or their staff or associates by LMC, LMC will not disclose such information to any third party without first receiving authorization from the Company, unless such disclosure is required by law or a competent court of jurisdiction, in which case LMC will provide appropriate documentation supporting such release of confidential information. Additionally, all advice and opinions rendered by LMC to the Company pursuant to this Agreement shall be treated as confidential and shall not be disclosed by the Company without the prior written approval of LMC unless such disclosure is required by law or a competent court of jurisdiction, in which case the Company will provide appropriate documentation supporting such release of confidential information. Notwithstanding the foregoing, the Company agrees that LMC may elect to publish a "tombstone" with regard to the Financing in trade publications, the general press, and/or on LMC's website or otherwise refer to the Financing for informational or promotional purposes.

[signature] 8/2/07
initial here

THE LONDON MANHATTAN COMPANY

3

**CORPORATE APPROVAL**: The Company warrants that it has received all approvals required by the Company's articles of incorporation, bylaws, shareholder agreements, operating agreements or other applicable documents prior to entering into this Agreement with LMC.

**INDEMNIFICATION:** The Company agrees to indemnify and hold harmless LMC (and each of its directors, officers, associates, members, agents and employees) against any losses, claims, damages or liabilities which LMC may be subject to in connection with Services performed as described in this Agreement unless such loss, claim, damage or liability resulted from the willful misconduct of LMC, or from gross negligence directly relating to affirmative acts attributable solely to LMC. The Company agrees that the total aggregate liability of LMC to the Company under this Agreement shall in no event exceed the fees paid to LMC pursuant to the Agreement under which such liability arises. The Company shall have no recourse against, and shall bring no claim against, any member, partner, employee, officer, associate, director, or agent of LMC arising under this Agreement. The Company represents and warrants that it has dealt with no broker, finder, intermediary, mortgage banker, advisor, consultant or other similar party in connection with the Financing other than LMC, and that if such is not the case, then the Company shall be responsible for any fee due such party, and the Company hereby indemnifies LMC with respect to any claims or suits brought by such party in any way related to the Financing.

**MISCELLANEOUS:** This Agreement may be executed by the parties hereto in counterparts, which counterpart execution shall have the same legal effect as if the parties signed the same original Agreement. A copy or counterpart of this Agreement signed by a party hereto transmitted by facsimile or other electronic means shall be a binding obligation of and enforceable against such party following execution by all parties hereto. This Agreement shall be construed without regard to any presumption or rule requiring construction against the drafting party. Notwithstanding any provision herein to the contrary, the obligations of the Company with regard to payment of compensation hereunder shall survive any closing and any termination hereof. This Agreement shall be subject to and enforced under the laws of the State of South Carolina, and venue for any action or dispute under this Agreement shall be in the Courts of Charleston County, South Carolina. The provisions hereof shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of the Company.

If the foregoing correctly sets forth our mutual agreement and understandings, please initial each page, sign as indicated below and return an executed copy to us.

Very truly yours,

**THE LONDON MANHATTAN COMPANY**

By : _Ronald C. Giguere, Senior Managing Director_

| Agreed and Accepted this ___ day of Aug, 2007: |
| CSA-Credit Solutions of America, Inc. |
| By : _____  Title: CFO |

initial here 8/2/07

THE LONDON MANHATTAN COMPANY